UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHAD E. KNOX,

        Plaintiff,

v.                                                    CIVIL CASE NO. 10-13175
                                                      HON. MARIANNE O. BATTANI
TROTT & TROTT, P.C,, a Michigan
corporation, DIRECT LENDING, INC., a
Delaware corporation, AURORA LOAN
SERVICES, LLC, a Florida limited liability
company, and MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC., a Delaware
corporation, and LEHMAN BROTHERS,

        Defendants.

_____/

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION AND DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

Before the Court are three motions:  Defendant Trott & Trott's Motion for

Summary Judgment (Doc. No. 18), Defendants Aurora Loan Services LLC and MERS'

Motion for Dismissal and for Summary Judgment (Doc. No. 23), and Plaintiff's Motion

for Leave to File Second Amended Complaint (Doc. No. 28).  The Court heard oral

argument on April 14, 2011, and at the conclusion of the hearing, took Defendants'

motions under advisement.  For the reasons that follow, Defendants' motions are

**GRANTED**, and Plaintiff's motion is **DENIED**.

## I. FACTUAL BACKGROUND

Plaintiff Chad E. Knox's claims arise out of a mortgage foreclosure on property he owned located at 29769 Marshall Drive, Westland.  The events precipitating the foreclosure of Plaintiff's property follow.

Knox executed two mortgages on February 7, 2002--one in the amount of $185,6000, the other for $46,400, to Defendant Mortgage Electronic Registration Systems, Inc., (MERS) as nominee for lender Lehman Brothers Bank, now known as Aurora Bank FSB (Aurora Bank). (Doc. No. 8, Ex. A.)   MERS assigned the mortgage to Aurora Loan Servicing (Aurora), a subsidiary of Aurora Bank, on July 25, 2008.  (Id., Ex. C.)  Aurora serviced the mortgages.

Knox was continuously delinquent in making payments on the Note, and by July 2008, the loan was in foreclosure.  (Id., Ex. D.)  The foreclosure proceedings were cancelled after Aurora and Knox entered into a Special Forbearance Agreement on August 8, 2008.  (Doc No. 18, Ex. E.)   In June 2009, the loans again were referred to foreclosure because Knox failed to make timely and full payments.

Defendant Trott & Trott, P.C. (Trott & Trott) commenced foreclosure proceedings. Trott & Trott sent a letter to Knox dated August 4, 2009, advising him that the debt was being accelerated and he had 30 days to dispute the debt.   (Doc. No. 18, Ex. F.)  The foreclosure sale occurred September 20, 2009.  Aurora Bank was the high bidder, and it quit claimed the property to Federal National Mortgage Association (Fannie Mae) on November 12, 2009.  (Id., Ex. H.)

A week before the foreclosure sale, Knox sent a request to Aurora to consider allowing the property to be sold in a short sale.  The request was approved on February

4, 2010, provided the short sale occur on or before March 19, 2010. (Doc. No. 18, Ex. I.)
Two extensions were granted; however, no closing took place. (Id., Exs. J, K.) Knox's
request for a possible loan workout subsequently was denied. (Doc. No. 18, Ex. L.)

The day the statutory redemption period was set to expire, March 30, 2010, Knox
filed for chapter 13 bankruptcy. The redemption period was extended to May 28, 2010.
No party exercised the right of redemption, and title vested in the Fannie Mae on May
28, 2010.

Knox filed his complaint in state court on April 1, 2010. (Doc. No. 18, Ex. M.)
Because of the pending bankruptcy, the state court action was administratively closed
on April 23, 2010. Know filed an amended complaint on April 27, 2010.     In his
amended complaint, Knox advances claims for breach of contract/unjust enrichment
against Lehman Brothers and MERS  (Count I), slander of title against Lehman and
MERS (Count II), equitable relief to set aside sheriff's deed (Count III), violations of the
UCC § 3-202 against Aurora (Count IV), and violation of the Fair Debt Collection
Practice Act (FDCPA) against Trott & Trott (Count V).

Fannie Mae obtained a lift of the stay on June 28, 2010. (Doc. No. 18, Ex. N.)
The state court action was reopened on August 5, 2010, and Defendants removed to
this Court on August 11, 2010.

## II.    STANDARD OF REVIEW

In assessing a motion to dismiss under Rule 12(c), the courts employ that same
standards used in analyzing a Rule 12(b)(6) motion-- the court "must construe the
complaint in the light most favorable to the plaintiff, accept all factual allegations as true,
and determine whether the plaintiff undoubtedly can prove no set of facts in support of

3

his claims that would entitle him to relief." In Re DeLorean Motor Co, 991 F.2d 1236,

1240 (6th Cir. 1993) (citation omitted).  Such a motion may not be granted "based on a

disbelief of a complaint's factual allegations." Id.  The court "should not weight the

evidence or evaluate the credibility of witnesses." Cameron v Seitz, 38 F.3d 264, 270

(6th Cir. 1994).  The motion should not be granted "unless it appears beyond doubt that

the Plaintiff can prove no set of facts in support of his claim which would entitle him to

relief." Cameron, supra, p 270 (quoting Conley v Gibson, 355 U.S. 41, 45-46 (1957)).

Further, "[w]hile this standard is decidedly liberal, it requires more than the bare

assertions of legal conclusions." In Re DeLorean, supra, at 1240 (citing Scheid v Fanny

Farmer Candy Shops, 859 F.2d 434, 436 (6th Cir. 1988)).  "In practice, 'a. . . complaint

must contain either direct or inferential allegations respecting all the material elements

to sustain a recovery under some viable legal theory.'" Scheid, supra, (quoting Car

Carriers Inc. v Ford Motor Co., 745 F.2d 1101, 1106 (7th Cir. 1984) (quoting In re

Plywood Antitrust Litigation, 655 F.2d 627, 641 (5th Cir. 1981)).

Federal Rule of Civil Procedure 56(c) authorizes the Court to grant summary

judgment "if the pleadings, the discovery and disclosure materials on file, and any

affidavits show that there is no genuine issue as to any material fact and that the

movant is entitled to judgment as a matter of law."  There is no genuine issue of

material fact if there is not a factual dispute that could affect the legal outcome on the

issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In determining

whether to grant summary judgment, this Court "must construe the evidence and draw

all reasonable inferences in favor of the nonmoving party." Hawkins v. Anheuser-

Busch, Inc., 517 F.3d 321, 332 (6th Cir. 2008).  However, the nonmoving party "cannot

4

rely merely on allegations but must set out specific facts showing a genuine issue for trial." Chappell v. City of Cleveland, 585 F.3d 901, 906 (6th Cir. 2009).

### III.  ANALYSIS

#### A.  PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT

At oral argument, the Court invited Plaintiff to address this motion before the dispositive motions.  Plaintiff informed the Court that he would prefer to argue the motion only in the event that the Court declined to grant Defendants the relief they requested.  At the conclusion of the hearing, the Court indicated that it would be issuing an opinion and order granting Defendants' motions and denied the motion for leave to file a Second Amended Complaint.

Although leave to amend should be freely given "when justice so requires," under Rule 15(a), FED. R. CIV. P., here, the Court finds granting the motion would result in undue delay and prejudice to Defendants.  See Crawford v. Roane, 53 F.2d 750, 753 (6th Cir. 1995).  Not only was discovery completed when Plaintiff filed his motion for leave to amend, dispositive motions were scheduled for oral argument, and the hearing had to be postponed to allow time for Defendants to respond to the request.  Plaintiff offered no justification for failing to make his request at an earlier stage in the litigation. See Duggins v. Steak 'N Shake, Inc., 195 F.3d 828, 834 (6th Cir. 1999).  Finally, Knox has occupied the property rent-free, tax-free, and insurance-free for over two years.  For these reasons, the motion is denied.

#### B.  TROTT & TROTT'S MOTION

In Count V of his amended complaint, which advances a claim under the Fair

Debt Collection Practices Act, Knox alleges that Trott & Trott engaged in collection

activity in September 2009, without advising him of his due process rights expressly

reserved in the Act at 15 U.S.C. § 1692(g).  Am. Compl. at ¶¶ 40-42.  Knox also asserts

that he did not receive a dunning letter.[1]

> Under the FDCPA,
>
> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing--
>
> (1) the amount of the debt;
>
> (2) the name of the creditor to whom the debt is owed;
>
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
>
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692a(6).

Trott & Trott has provided a copy of its August 4, 2009 correspondence with

Plaintiff.   Plaintiff does not dispute that the letter complies with the statutory

---

[1] Although Trott & Trott addressed additional counts in the amended complaint, including slander of title and equitable relief to set aside the sheriff's deed, the amended complaint identifies Trott & Trott only in the FDCPA claim.

6

requirements.  Accordingly, there is no genuine issue of material fact regarding Trott & Trott's compliance with the Fair Debt Collection Practices Act.

Finally, to the extent that Knox claims that Trott & Trott violated his due process rights, case law in this circuit is clear that a foreclosure by advertisement is "an incident of the private right to contract," and does not implicate due process clause.  Northrip v. Fed. Nat'l Mortg, Assoc., 527 F.2d 23, 28-29 (6th Cir. 1975).  Therefore, this claim fails as a matter of law, and the Court grants Trott & Trott's motion.

### C.  AURORA LOAN SERVICES AND MERS' MOTION

Although Plaintiff brings claims for breach of contract, unjust enrichment, slander of title and equitable relief, in Plaintiff's response to Defendants' motion, and again at oral argument, he limited his argument to the validity of the mortgage.  In advancing the argument, Plaintiff asks the Court to ignore his conduct and limit its focus to the law. According to Plaintiff, "MERS was the mortgagee that had no interest in the note at closing thereby creating a split between the note and mortgage rendering the mortgage unenforceable. . . ."  (Doc. No. 21, Ex. T.)  Under Plaintiff's theory, the Note became unsecured, and the lender would have to pursue a judicial foreclosure and assert an equitable lien.

Plaintiff's theory fails for two reasons: the absence of dispositive authority supporting his position and the language of the mortgage itself.  Plaintiff recognizes that several courts in this district have ruled contrary to his position.  See e.g. Yuille v. American Home Mortg. Servicing, Inc., No. 09-11547, 2010 WL 3802260 (E.D. Mich. Sept. 22, 2010) (rejecting the plaintiff's "fundamental theory of recovery. . .that nominee mortgages such as those granted to MERS as nominee for mortgage lenders

7

constitutes an impermissible separation of the security interest from the underlying debt"); Hilmon v. MERS, No. 06-13055, 2007 WL 1218718 (E.D. Mich. Aug. 23, 2007) (containing language that MERS was both the mortgagee and nominee of the lender). In Corgan v. Deutsche Bank Nat'l Trust Co., No. 09-939, 2010 WL 2854421, *4 (W.D. Mich. July 20, 2010), the court rejected the plaintiff's argument that a change in the ownership of the mortgage eviscerated the authority granted to MERS.  The court observed that its "authority was not changed by any action which occurred after the time of the original mortgage. Plaintiffs clearly and expressly gave MERS the power to foreclose on the defaulted mortgage. That power was never taken away from MERS by any transfer of the mortgage or modification of some of the terms of the mortgage." Id. Plaintiff admits he has no state or federal authority construing Michigan law to support his position that the split in the mortgage and note renders the underlying debt a nullity.

Nevertheless, Knox maintains that these decisions are flawed because the validity of the mortgage was presumed.  He concludes that the invalidity of a MERS mortgage transaction requires that the debt be enforced judicially, rather than through a sheriff's sale.  Specifically his position is that MERS cannot be both nominee and mortgagee; therefore, MERS is not a holder in due course of the mortgage.  Power of sale is available only to holders of the mortgage, not their nominees.  See Am. Compl. at ¶¶ 22-26.

Not only is this argument contrary to the decisions of the courts in this district and in Michigan, it ignores the plain language in the mortgage, in which the mortgagor and lender agreed to name MERS as the "mortgagee under the Security Agreement."  (Doc.

8

No. 18, Ex. A..)  In addition, the mortgage designates MERS to act "as nominee for the Lender and Lender's successors and assigns."  (Id.)    Further, Knox agreed to convey to MERS the power of sale.  (Id.)

Even if Plaintiff were correct, it is undisputed that after Plaintiff defaulted on the loan, he signed a loan forbearance agreement with Aurora, dated August 12, 2008.  In the agreement, Knox made the following admissions:

> Customer admits that the Arrearage is correct and is currently owing under the Loan Document, and represents, agrees and acknowledge that there are no defenses, offsets, or counterclaims of any nature whatsoever to any of the Loan Documents or any of the debt evidence or secured thereby.

(Doc. No. 21, Ex. G, ¶ 3.)  In sum, neither the facts nor case law support Plaintiff's claim.

## IV.  CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendants' motions and **DENIES** Plaintiff's request to amend his complaint.

**IT IS SO ORDERED.**

s/Marianne O. Battani
MARIANNE O. BATTANI
UNITED STATES DISTRICT JUDGE

DATED: April 21, 2011

## CERTIFICATE OF SERVICE

      Copies of this Order were served upon counsel of record on the above date, electronically..

                                        _____

                                        s/Bernadette M. Thebolt
                                        CASE MANAGER